Linda **WILLIAMS** and John **W. Williams, Individually and as Representatives of The Estate of John Wesley Williams, Deceased, Appellants,**

v.

Stanley **CHATMAN; Carolyn Thompson; Melissa Gebhart; Larry Reat; Dorothy Johnson; and Bobbie Patterson, Appellees.**

No. 07–98–0310–CV.

Court of Appeals of Texas, Amarillo.

Oct. 20, 1999.

Law Office of George Hanko, III, George J. Hanko, III and Theodore G. Skarbowski, Austin, for appellant.

McWhorter, Cobb & Johnson, Ann Manning, R. Michael McCauley, Jr., Craig, Terrill & Hale, Robert L. Craig, Jr., Lubbock, for appellee.

Before BOYD, C.J., and QUINN and REAVIS, JJ.

BOYD, Chief Justice.

This appeal arises out of a suit by Linda and John W. Williams, individually and as representatives of the estate of their son John Wesley Williams (the Williams), against six school employee defendants and others for the death of John. They now appeal from a summary judgment in favor of the school employees based on the statutory immunity provided by Section 22.051 of the Texas Education Code. Finding no reversible error in the judgment of the trial court, we affirm.

Although many of the relevant facts are disputed by the parties, in accordance with the standards applicable to the review of summary judgments, we accept as true those facts alleged by the Williams, the non-movants below. In the spring of 1995, John Wesley Williams was a student at W.G. Alderson Junior High School in Lubbock. On May 22, 1995, after payment of a $3 fee, he attended a party sponsored by his school at the Texas Tech University Aquatic Center. Several teachers and other school employees also attended the party. At the urging of other students, John got onto the diving board. Although he told the other students he was unable to swim, they refused to let him climb down from the diving board, insisting that he jump into the water. Shortly after he jumped from the board, some of the school employees noticed that he did not resurface and called that to the attention of a Texas Tech lifeguard. John was revived using CPR. He was taken by ambulance to a local hospital but died the following day of cardiac arrest.

The Williams, individually and as representatives of his estate, brought suit against Texas Tech, the lifeguards, their supervisors, the Lubbock Independent School District, and several school employees present at the event. The Williams' third amended petition named the following defendants each in their individual capacities: Kat Powell, director of the Texas Tech Recreation Center; Joe Maclean, director of the Texas Tech Aquatic Center; Andrew Copple, Dawn Carlson, Randi Finkelberg, Jennifer Fuller, and Joel Schuh, lifeguards at the aquatic center; Stanley Chatman, school principal; Carolyn Thompson and Melissa Gebhart, assistant principals; Larry Reat and Dorothy Johnson, teachers at the school; and Bobbie Patterson, a school counselor.

Each of the school employees moved for summary judgment asserting that they were entitled to immunity under Section 22.051 of the Texas Education Code.[1] The Williams responded to these motions with

1. All statutory references are to the Texas Education Code Annotated (Vernon 1996 & Supp.1999), unless otherwise noted.

several objections, including special exceptions and objections to their summary judgment evidence. Without ruling on these objections, the trial court granted each of the motions and severed the claims against the school employee parties, thus making the judgment final. The court subsequently overruled each of the objections to the summary judgment evidence and, as well, the motions for new trial.

The Williams now challenge the judgment in favor of those defendants. In support of that challenge, they present six allegations of error in the trial court's judgment. They are that the court erred in: 1) granting summary judgment on the issue of statutory immunity; 2) granting summary judgment on their claims of gross negligence; 3) granting summary judgment on issues not raised in the pleadings; 4) granting summary judgment for Larry Reat on issues not before the court; 5) considering inadmissible summary judgment evidence; and 6) overruling their motions for new trial.

It is fundamental that summary judgment for a defendant is proper only when the defendant negates at least one element of each of the plaintiff's theories of recovery, or pleads and conclusively establishes each element of an affirmative defense. *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). When reviewing a summary judgment, we take as true all evidence favorable to the non-movant and indulge every reasonable inference in the non-movant's favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 549 (Tex.1985).

■ The Williams' first assignment of error questions the applicability of the statutory immunity afforded by Section 22.051 of the Texas Education Code. Subsection (a) of that statute provides:

A professional employee of a school district is not personally liable for any act

that is incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee, except in circumstances in which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily injury to students.

Tex. Educ.Code Ann. § 22,051(a) (Vernon 1996). Subsection (c) of the statute defines "professional employee" to include: a superintendent, principal, teacher, supervisor, social worker, counselor, nurse, and teacher's aide. The immunity afforded by this statute contains four elements which must be established by the person asserting it: 1) he or she is a professional employee of a school district, 2) acting incident to or within the scope of duties, 3) which involve the exercise of judgment or discretion, and 4) are not within the stated exceptions. *Downing v. Brown*, 925 S.W.2d 316, 320 (Tex.App.—Amarillo), *reversed in part on other grounds*, 935 S.W.2d 112 (Tex.1996).

The Williams do not contest that each defendant is a professional employee as that term is defined in Section 22.051. Nor do they assert any dispute as to the inapplicability of the statute's exceptions. Their argument is that appellees failed to conclusively establish the second and third elements required for immunity.

### Within Scope of Duties

Appellees' motions for summary judgment, and their brief on appeal, only address whether their conduct was within the scope of their duties. Because they did not argue that the conduct was incident to their duties, we may not consider that as a basis on which to affirm the judgment. *Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex.1993) (holding summary judgment cannot be affirmed on grounds not expressly set out in the motion or response).[2]

2. A brief of *amicus* arguing their conduct was

"incident to" their duties overlooks this well-

The Williams argue there is a genuine question of fact on whether appellees were acting within the scope of their duties at the party because: 1) the party was not on school property, 2) it occurred after normal school hours, 3) they were not required to attend, and 4) they were not paid for attending the party. They have cited no authority holding the scope of a professional school employee's duties are limited to the geographical boundaries of school property or to regular school hours.

■ The Williams cite the deposition of Larry Reat and the principal, Stanley Chatman. The Williams characterize Reat's testimony as stating that he did not get paid extra to attend the party and his regular pay did not cover such activities and therefore his attendance at the party was not within the scope of his duties. An examination of Reat's testimony and other summary judgment evidence leads to the contrary conclusion. Reat answered an unequivocal yes when asked if he felt it was part of his job to attend the function. When asked whether the function was "a part of [his] paycheck too," Reat responded that "[t]he paycheck doesn't cover it." He elaborated on this statement by explaining that he thought he would be making less than minimum wage if he counted all the time spent on school activities outside school hours. The final deposition question on this issue was "do you feel that your paycheck covers extracurricular activities or activities such as off-campus field trips after-hours?" Reat's answer was: "Actually, I really don't give it a lot of consideration."

Reat's testimony that he felt it was part of his job to attend the party is not controverted by the apparently facetious comment concerning his pay. This is so for several reasons. First, the record contains a copy of each of the defendants'

employment contracts for the 1994–95 school year. Those contracts specifically provide the employees were to be paid an annual salary and not an hourly wage. Consequently, the fact that the school did not provide extra pay for attending the party is irrelevant. The contracts provided that the salary was in consideration of "any additional duties, responsibilities, tasks, and transfers," and that the employee could be assigned "other or additional duties during the terms (sic) of this contract." Additionally, we have held that the scope of employment issue is not determined by the payment of wages, the controlling factors concern the employer's right of control. *Doe v. Boys Clubs of Greater Dallas*, 868 S.W.2d 942, 948–49 (Tex.App.—Amarillo, 1994), *aff'd*, 907 S.W.2d 472 (Tex.1995).

■ The Williams next focus on the testimony of Principal Chatman concerning whether he "directed" or "requested" the school staff to attend the party. They do not cite authority which would suggest that a "request" to an employee precludes performance of the requested task from being within the scope of their duties. Rather, they contend that the evidence shows a conflict on this issue, thus presenting a fact question and precluding summary judgment. Even if the evidence on this issue is conflicting, whether Chatman directed or requested the staff to attend is not material to the issue of their immunity. To adopt the Williams' argument whether an employee was acting within the scope of their duties would turn on the specific wording chosen by their supervisor. We do not agree that the "scope of duties" determination turns on such hyper-technical analysis. It would lead to inconsistent results in cases with virtually identical facts.[3]

established rule.

3. Examples would include cases like *Victory v. Faradineh*, 993 S.W.2d 778 (Tex.App.—Dallas 1999, n.w.h.), where a deputy sheriff struck a car while driving to deliver film to a photographic laboratory. The rule advocated by the Williams would have the government employer's liability determined on whether the deputy's supervisor directed or requested him to make the delivery.

The relevant issue is whether the conduct of the school employees attending the party was in the scope of their employment, not whether every teacher was required to be present. The affidavits of each of the employees are couched in terms of their obligation to supervise the students at the party. Chatman's affidavit states that he told the teachers and administrators that he "expected them to attend the party to help supervise the students." The affidavits of each of the other defendants, except Gebhart, stated that Chatman requested them to attend, and discussed their obligation to supervise students. Gebhart's affidavit recites that at the party, she asked Chatman where he wanted her to supervise students, showing her belief that she was obligated to perform that duty. Taking evidence favorable to the Williams as true that Chatman merely requested the school employees to attend, it is clear that the purpose of their attendance was to supervise the students, an obligation they would not have but for their employment with the school district.

The Williams also argue that there is "no competent summary judgment evidence ... that the defendants were hired to take children to parties." Appellees have presented the affidavit of the school superintendent, Curtis Culwell, which specifically addresses that issue. Culwell's affidavit states "the employees are expected to attend school-sponsored activities, including field trips, at the direction or request of their principal. Failure to comply with this request, without prior approval from the principal, could result in discipline of the employee." This uncontroverted summary judgment evidence establishes that "taking children to parties" was within the scope of appellees' duties.

■ The Williams finally argue there is a fact question on whether appellees were acting within the scope of their duties because they "violated the Texas Tech facility rules." They argue our decision in *Dickerson v. Davis*, 925 S.W.2d 123 (Tex. App.—Amarillo 1996, writ dism'd w.o.j.),

suggests that violation of such rules precludes a finding that they were acting in the scope of their duties. We disagree.

■ The rules allegedly violated required that children under the age of 17 be supervised at all times and that only one person was allowed on the diving board at a time. We initially note that the Williams provide no citations to evidence in the record supporting either contention. The summary judgment evidence shows that numerous faculty members were present continuously during the party for the purpose of supervising the students. Secondly, an employee's negligent performance of their duties does not prevent the acts from being within the scope of their duties. *See Leadon v. Kimbrough Bros. Lumber Co.*, 484 S.W.2d 567 (Tex.1972). This rule is illustrated in the context of school employee immunity in *Pierson v. Houston Independent School Dist.*, 698 S.W.2d 377, (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.), where the court of appeals noted that even assuming the defendant principal's conduct was in violation of city ordinances or state law, that would not bar the application of his statutory immunity. *Id.* at 381. Finally, *Dickerson* did not discuss whether the defendant was acting within the scope of his authority because both parties agreed that he was so acting. 925 S.W.2d at 125. The issue there was whether the city employee was performing a discretionary act. *Id.* at 126.

We find appellees' summary judgment evidence established, as a matter of law, that they were acting within the scope of their duties as defined in section 22.051(a) of the Texas Education Code.

### Exercise of Judgment or Discretion

The third element a school employee must establish to be entitled to immunity under Section 22.051 is that the act or acts upon which the claims are based involved the exercise of judgment or discretion. The Williams question whether appellees' duty to supervise the students was minis-

terial or discretionary. This is not a proper characterization.

██ It is undisputed that appellees had a mandatory duty to supervise the students. This was supported by the deposition testimony of Chatman, Reat, the school superintendent and the Williams' expert witness, Jeffrey L. Ellis. Appellees presented evidence that the school district had no policies directing teachers how to supervise students as well as Chatman's affidavit that he did not tell teachers how to supervise the students. Even when Melissa Gebhart specifically asked Chatman where he wanted her at the party, his instruction was to "just walk around and keep checking on the kids." This vague instruction is evidence that she was to use her own judgment.

The Williams argue the mandatory duty to supervise made the act ministerial and therefore did not involve the exercise of judgment or discretion. Although they contend the supreme court's opinion in *Downing v. Brown*, 935 S.W.2d 112 (Tex. 1996) supports that contention, we are convinced that the holding in *Downing* establishes that appellees' duty to supervise involved the exercise of judgment or discretion.

The supreme court's opinion in *Downing* was a review of this court's opinion in *Downing v. Brown*, 925 S.W.2d 316 (Tex. App.—Amarillo 1996). In that case, we held that a school district policy requiring teachers to develop and post a discipline management plan left the teacher no discretion as to *whether* she developed and posted a plan, distinguishing those mandatory duties from her discretion in determining the plan's content. *Id.* at 321. This distinction was supported by a line of cases recognizing the difference between a duty to perform an act and the exercise of discretion as to how the act is performed. *See, e.g., Greenberg, Benson, Fisk and Fielder, P.C. v. Howell*, 685 S.W.2d 694, 695 (Tex.App.—Dallas 1984) (orig.proceeding); *Boswell, O'Toole, Davis and Pickering v. Stewart*, 531 S.W.2d 380, 382 (Tex.

Civ.App.—Houston [14th Dist.] 1975) (orig.proceeding); *Jones v. Smith*, 470 S.W.2d 305, 307 (Tex.Civ.App.—Houston [1st Dist.] 1971) (orig.proceeding). Citing only the purpose of Section 22.051, our supreme court declined to follow the reasoning in this line of cases and apparently viewed all aspects of the "broad responsibility of maintaining classroom discipline" as discretionary. *Downing*, 935 S.W.2d at 114.

The court's reference to the teacher's "responsibility" in *Downing* implied a duty to maintain discipline. The existence of this duty did not prevent the court from holding it was a duty which involved the exercise of judgment or discretion. Accepting as true the Williams' claim of a mandatory duty to supervise the students, they offer no distinction between this duty and the duty to maintain discipline in *Downing*. We find that, under our supreme court's opinion in *Downing*, appellees' duty to supervise involved the exercise of judgment or discretion within the meaning of Section 22.051. Several cases decided under the predecessor to Section 22.051 support the conclusion that the statutory immunity provided to professional school employees applies to claims of failure to supervise or negligent supervision. *See Barr v. Bernhard*, 562 S.W.2d 844 (Tex.1978) (immunity applied to claims of failure to supervise); *Diggs v. Bales*, 667 S.W.2d 916 (Tex.App.—Dallas 1984, writ ref'd n.r.e.) (negligent supervision); *Schumate v. Thompson*, 580 S.W.2d 47 (Tex. Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.) (failure to supervise). *But see, Foster v. Estrada*, 974 S.W.2d 751, 754 (Tex.App.—San Antonio 1998, pet. denied).

██ The Williams next argue summary judgment was improper because appellees were "not immune from civil liability for violation of their independent duty to supervise under the common-law doctrine of *in loco parentis* " or their duty to follow the Texas Tech Aquatic Center rules. These arguments are without mer-

it. The Williams offer no support for the implicit assumption that the grant of immunity contained in Section 22.051 only applies to some theories of liability. The plain language of the statute imposes no such limitation. Where the elements of an immunity defense are established, the statute provides the employee "is not personally liable." This immunity applies without regard to the plaintiff's theory of liability. *See Duson v. Midland County Independent School Dist.,* 627 S.W.2d 428, 429 (Tex.Civ.App.—El Paso 1981, no writ) (rejecting a similar argument in a claim against a school district).

■ We also reject the Williams' argument, based on *Kassen v. Hatley,* 887 S.W.2d 4 (Tex.1984), that appellees' discretion was not "governmental" discretion. That case involved claims of medical malpractice against medical personnel employed by a government entity. In addressing the defendants' claims of official immunity, the court rejected the notion that it only applied to activities which were "uniquely governmental." *Id* at 10. Even so, based on public policy, the court held that official immunity did not apply to the exercise of "medical discretion." *Id* at 11. Although no case applies this analysis to the statutory immunity granted under Section 22.051, the Williams argue that the *Kassen* distinction is analogous to the facts before us. We disagree. Cases addressing the issue uniformly hold school sponsored activities as "governmental." *See Gravely v. Lewisville Independent School Dist.,* 701 S.W.2d 956, 957 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.).

After reviewing each of the arguments advanced by the Williams in support of their first issue, we find the summary judgment evidence sufficient to establish appellees' affirmative defense of immunity as a matter of law and overrule the Williams' first issue.

### Immunity for Gross Negligence

The Williams' second issue challenges the summary judgment on the ground that the immunity provided by Section 22.051 of the Texas Education Code does not apply to claims of gross negligence. They cite *Campbell v. Jones,* 153 Tex. 101, 264 S.W.2d 425 (1954), for the proposition that government officials have no immunity when they act willfully or maliciously or in cases of intentional torts. We initially note that neither *Campbell* nor the case before us contain any allegation of intentional torts. Moreover, the Williams' petition did not allege that appellees acted with malice, it merely alleged gross negligence. Although it has since been modified, the governing version of Section 41.003 of the Civil Practice and Remedies Code permitted the recovery of exemplary damages for gross negligence and malice, with each term being defined in Section 41.001.

The Williams' logic appears to be that since *Campbell* stated, even in *dicta,* that public officials can be liable for acts committed with malice, and exemplary damages may be recovered for both malice and gross negligence, immunity must not be available for gross negligence. We find this reasoning unpersuasive.

First, *Campbell* actually involved the liability of school board members for breach of contract, not a tort. *Id.* at 425. It did not involve a claim for exemplary or punitive damages. Additionally, and significantly, *Campbell* was decided before the legislature enacted the progenitor to Section 22.051, former Section 21.912. Acts of May 30, 1995, 74th Leg., R.S., ch. 260, §§ 58, 86, 1995 Tex.Gen.Laws 2207, 2498, 2505.

■ Appellees' response to the Williams' contention focuses on the rules of statutory construction. In particular, they emphasize the rule that words excluded from a statute must be presumed to have been excluded for a purpose. *Cameron v. Terrell and Garrett, Inc.,* 618 S.W.2d 535, 540 (Tex.1991). They point to Sections 22.052 and 22.053, which also address the immunity of school employees and volun-

teers and expressly state the immunity granted does not apply to liability for gross negligence. The legislature's omission of this limitation from Section 22.051, they argue, supports the conclusion that the immunity it provides is applicable to claims of gross negligence. *See Laidlaw Waste Systems, Inc. v. City of Wilmer,* 904 S.W.2d 656, 659 (Tex.1995). We agree. Applying these well established rules of statutory construction we hold the trial court did not err in applying the immunity of Section 22.051 to the Williams' claims of gross negligence. We overrule their second issue.

◼ In their third issue, the Williams assign error to the granting of summary judgment "on issues not raised by the plaintiffs' pleadings or defendants' motion." Their specific complaint is that their live pleading alleged the defendants "failed to supervise" John and the other students and violated the Aquatic Center rules, but that appellees' motion for summary judgment attempted to negate only the "negligent supervision" allegations and did not address the issue of "failing to supervise." Consequently, they allege, the motions did not negate the claims actually asserted and summary judgment was improper. We disagree.

Summary judgment was granted on immunity, the sole ground raised in appellees' motions.[4] As discussed above, a defendant's entitlement to immunity is determined by their ability to establish the elements of that immunity. Once established, the immunity applies without regard to the particular theory alleged by the plaintiff. Here, appellees established each of the statutory elements of immunity under Section 22.051 and the inapplicability of the statute's exceptions. That immunity defeats the Williams' negligence claims regardless of whether those claims were based on appellees' actions or failure to act. We overrule the Williams' third issue.

◼ The Williams' fourth issue assigns error to the granting of summary judgment for Larry Reat on the grounds of no evidence of duty or proximate cause because 1) those grounds were withdrawn before the hearing on the motion for summary judgment, and 2) there were genuine issues of material fact on those issues. The withdrawal of these grounds is supported by an order signed August 19, 1998. This point is easily addressed by reference to the well-established rule that if a trial court's order granting summary judgment does not specify the ground or grounds relied upon for its ruling, summary judgment will be upheld if at least one ground advanced in the motion survives review. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex. 1989). Here, Reat's motion closely tracked the other motions in asserting statutory immunity. Our holding that the summary judgment evidence supports the trial court's finding that immunity applies is sufficient to sustain that judgment and obviates the need to address any other theories which may have been advanced by appellees in the trial court. We overrule the Williams' fourth issue.

The fifth issue raised by the Williams alleges error in considering improper evidence. In their first subdivision of this issue, they contend the trial court "admitted and considered evidence and argument contrary to the judicial admissions of [Culwell, Chatman and Reat] that supervising students is a mandatory act which [they] have no discretion in determining to do." This argument merely reasserts the argument made in support of their first issue. As discussed above, under our supreme court's holding in *Downing,* appellees' concession of a mandatory duty to supervise was not inconsistent with it being a discretionary act within the meaning of Section 22.051.

In their second assertion under this issue, the Williams challenge the overruling of their objections to appellees' summary

4. As discussed below, Reat's motion asserted additional grounds.

judgment evidence. We initially note that the manner of their presentation of this issue is violative of Rule 38.4 of the Rules of Appellate Procedure. That rule imposes a 50–page limit on an appellant's or appellee's brief. Rule 38.1(j)(2) specifically provides that items should not be included in an appendix in an attempt to avoid the page limits imposed by the rules. That appears to be exactly what the Williams have done. In connection with this issue their brief, which is just under the 50–page limit, contains a bare listing of the statements to which they object. Review of their argument in support of these objections requires examination of a 27–page appendix. Although we have reviewed that material in this case, we caution counsel to strictly adhere to the limitations imposed by the Rules of Appellate Procedure.

The first two objections in the Williams' brief are representative of these objections. The first objection is to the statement in the affidavit of Chatman, the school principal, that "if transportation is required [to attend a school sponsored trip] Board policy FMG (LOCAL)(see exhibit I) requires that the students are transported in transportation provided by the school to and from the event, unless the parent authorized otherwise." They object on the basis that the statement is conclusory, contains uncontrovertible information, represent his subjective and unilateral beliefs and are unsupported by any factual information and provides no basis for any of the opinions, beliefs or conclusions. It is clear from the quoted portion of the affidavit that the objections are without merit. The affidavit refers to the school board's written policies which were attached to the affidavit. Examination of that document clearly supports the challenged affidavit statement.

The objection to the description of the event as school-sponsored is similarly baseless. They assert that Chatman's characterization of the party as school-sponsored is controverted by the affidavit of assistant superintendent Wayne Havens. An examination of Havens's affidavit strongly supports Chatman's statement. Havens's affidavit provided:

Whenever a Principal wishes to take ... a group of their students, to an off-campus destination, they must contact my office and receive prior approval. In May, 1995, Stanley Chatman called my office and I gave approval for the Alderson students to go to the Texas Tech Recreation Center for their end-of-school party. Whenever a school-sponsored event or field trip takes place, and transportation is needed, it is required that the students are transported to and from the event by transportation provided by the district.

The affidavit of Dorothy Johnson expressly stated the party was a school-sponsored event.

We have examined each of the objections advanced in the Williams' 27 pages of objections to appellees' summary judgment evidence and find none of them to be meritorious. Addressing them individually in this opinion would only serve to lengthen the opinion. We overrule the Williams' fifth issue.

The Williams' sixth and final issue recasts their previous issues by alleging the trial court abused its discretion in overruling their motion for new trial "based upon the errors noted in issues number 1, 2, 3, 4, and 5 above." Because we find no reversible error in those issues, we likewise overrule the Williams' sixth issue. The judgment of the trial court is hereby affirmed.